NOT DESIGNATED FOR PUBLICATION

No. 127,651

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEVIN WAGNER,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Submitted without oral argument. Opinion filed August 29, 2025. Affirmed.

*Michael A. Millett*, of Law Office of Michael A. Millett, P.A., of Overland Park, for appellant.

*Donald J. Cooper*, Kansas Department of Revenue, for appellee.


Before HILL, P.J., MALONE and HURST, JJ.


PER CURIAM:  In Kansas, driving a vehicle is a privilege—not a right. By applying for a Kansas license, a driver agrees to submit to alcohol testing when the facts call for such. Refusing to submit to a breath test for the consumption of alcohol when the circumstances make it reasonable for a law enforcement officer to request one can lead to a driving license suspension. That is what happened in this case.

This is an appeal of a district court's approval of the Department of Revenue's suspension of Devin Wagner's driving privileges after he refused to submit to a breath test. A review of the record reveals that substantial competent evidence supports the

1

district court's factual findings. There are reasonable grounds to believe that Wagner was driving under the influence of alcohol and an officer's request for a breath test was reasonable. Those findings also support the court's conclusion that the suspension was proper. To us, Wagner claims that the form used to certify his test refusal is untrue. Those claims are unsupported. Accordingly, we affirm.

*An early morning car stop leads to alcohol testing.*

In the early morning hours of May 1, 2021, Officer Beau Soucie saw a car run a stop sign then turn without using a turn signal. Based on these observations, Officer Soucie stopped the car. As he approached the vehicle, Officer Soucie noticed:

(1) alcohol emanated from the vehicle,

(2) alcoholic beverage containers were on the front passenger floor, and

(3) the driver's pants were completely unzipped.

Officer Soucie noted that the driver—Devin Wagner—had slurred speech and his eyes were glazed over. Based on his observations, Officer Soucie asked Wagner to get out of the car and perform some field sobriety tests.

During the one-leg stand test, Wagner swayed and put his foot down three times. He also exhibited signs of impairment during the walk-and-turn test. And Wagner failed the alphabet and counting tests. Officer Soucie requested Wagner submit to a preliminary breath test, which Wagner refused and insisted on submitting to a blood draw instead. Based on Wagner's refusal to submit to the breath test and other observations of impairment, Officer Soucie arrested Wagner for driving under the influence of alcohol. On the certification form, Officer Soucie reported that Wagner's driving license was not valid because his license had expired.

2

After arresting Wagner, Officer Soucie transported Wagner to the police station where he asked Wagner to submit to the evidentiary breath test—an Intoxilyzer test. Officer Soucie provided Wagner with his own copy of the DC-70 form, which sets out the implied consent advisories if the person refuses to submit to the test. Wagner again refused to submit to the test. Officer Soucie testified that he spent 10 minutes going back and forth with Wagner on the test options and went over the DC-70 form several times. Wagner repeatedly refused to submit to a breath test.

Once it was clear that Wagner would not give a breath sample, Officer Soucie transported Wagner to the hospital for a blood draw. The blood draw occurred an hour and a half after the initial traffic stop. The results of the blood test showed that Wagner's blood alcohol content was 0.079, plus or minus 0.005. Rounded down, Wagner's BAC was 0.07, which is below the legal limit. Officer Soucie resubmitted the blood draw for drug analysis, and none were found.

Because Wagner refused to submit to the breath test, Officer Soucie issued Wagner a DC-27 form. The DC-27 is a form used to "certify a test refusal or test failure," which triggers an administrative action by the Kansas Department of Revenue resulting in a suspended or revoked driving license. To contest the driving license suspension, a licensee must request an administrative hearing after service of the DC-27 form—to which Wagner timely requested.

In this case, at the bottom of that form is a dotted line and beneath that line is the subtitle, "TEMPORARY DRIVER'S LICENSE." Beneath the subtitle is a heading: "THIS NOTICE IS: NOT VALID as a temporary license for the reason that your license: [a checked box] has expired."

Wagner pursued an administrative review of his suspension. After an in-person hearing, the administrative hearing officer affirmed Wagner's driving license suspension.

3

The hearing officer found that there were reasonable grounds for Officer Soucie's belief that Wagner was under the influence of alcohol while operating a vehicle.

Wagner timely sought the review of the hearing officer's decision to the district court. His primary argument to the court was that Officer Soucie's statement on the DC-27 form was false. He argued that because his license was valid, the false statement invalidated the entire form. At the hearing, the district court considered Officer Soucie's testimony and the parties' arguments and then announced its ruling from the bench.

In its ruling, the district court found that Officer Soucie's statement on the DC-27 form did not absolve Wagner of the suspension from his license. In support, the court relied on the officer's observations that Wagner was driving under the influence of alcohol. The court found that Wagner's blood test results were not relevant in the administrative action. The district court accordingly upheld the suspension of Wagner's driving privileges. Wagner appeals that order to this court.

The parties' views of the issue before us differ. Wagner frames this issue as a denial of due process based on the deprivation of Wagner's property—his driving license. In his view, Officer Soucie took Wagner's valid license and issued an invalid license. The Kansas Department of Revenue frames this issue more narrowly as Officer Soucie's marking on the DC-27 form of Wagner's license as not valid does not invalidate the certification of the DC-27 form.

We agree with the Department's view. Was it a mistake for the officer to assess Wagner's license as invalid? And, if so, did that invalidate the entire DC-27 form?

*Resolving this appeal requires a close examination of the DC-27 form.*

When Wagner walked away from this encounter with the officer, he had a DC-27 form in his possession. The DC-27 form serves as both notification and certification of a driving license suspension. *Sandate v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 450, 454, 471 P.3d 700 (2020). The notification portion is required under K.S.A. 8-1001(c) and includes:

(1) that the person does not have the right to consult with an attorney regarding whether to submit to any testing, but an attorney may be requested and consulted after the completion of testing;

(2) if the person refuses to submit to testing, their driving privileges will be suspended for one year;

(3) if the person fails the test, their driving privileges will be suspended for either 30 days or one year;

(4) the refusal to submit to testing may be used against the person at any trial or hearing related to the operation of a vehicle while under the influence of alcohol or drugs, or both; and

(5) the results of the test may similarly be used in any trial or hearing involving the same. K.S.A. 8-1001(c)(1)-(5).

K.S.A. 8-1002 provides the five items of information required under the certification portion, which are:

(1) the person's name, driving license number, and current address;

(2) the reason and statutory grounds for the suspension;

(3) the date notice is being served and a statement that the effective date of the suspension is 30 days after service;

(4) the right of the person to request an administrative hearing; and

(5) the procedure the person must follow to request an administrative hearing. K.S.A. 8-1002(d).

Under K.S.A. 8-1001(a), law enforcement officers have the discretion to determine which alcohol test to administer.

*This DC-27 form included the required information.*

Here, the DC-27 form included the instructions for law enforcement officers to certify a breath test refusal or failure.

Officer Soucie initialed paragraphs 1-4, stating that he had reasonable grounds or probable cause to believe Wagner was operating a vehicle while under the influence of alcohol; that he arrested Wagner; that he presented oral and written notice as required under Kansas law; and that Wagner refused to submit to or complete testing as requested by Officer Soucie.

Officer Soucie also initialed that he personally served Wagner a copy of the DC-27 form as required under K.S.A. 8-1002(c).

The next portion of the DC-27 form listed the reasonable grounds that caused Officer Soucie to believe Wagner was driving while under the influence of alcohol. Officer Soucie stated that Wagner committed a traffic violation by running a stop sign and that Officer Soucie saw Wagner operate the vehicle. Finally, Officer Soucie listed that he smelled the odor of alcoholic beverages; observed alcoholic beverage containers in the vehicle; Wagner's sobriety tests indicated impairment; Wagner's speech was slurred; he had poor balance or coordination; Wagner stated that he consumed alcohol; and Wagner refused to submit to the preliminary breath test.

6

Then, at the bottom of the certification portion of the DC-27 form, Officer Soucie certified the information that he provided on the form and signed the form.

After Officer Soucie's certification and signature, there is a dotted line denoting the sections as distinct and separate. The bottom of the form relates to the issuance, or nonissuance, of a temporary driving license. Officer Soucie marked that the notice was **not valid** as a temporary license because Wagner's license had expired. A temporary license stays any suspension of a valid driving license for 30 days unless the licensee timely requests an administrative hearing.

Wagner contests that by taking his driving license and not issuing him a temporary license, Officer Soucie deprived him of his right to due process. But Wagner's driving privileges were never suspended as a result of his refusal to submit to the breath test at issue here. Because he timely requested an administrative hearing, his driving privileges have remained valid and continued to stay the suspension for the four years that this case has been litigated.

In assessing due process claims, we look at several factors. Wagner had the notice and opportunity to be heard as required by the statute, this satisfying procedural due process guarantees. He received personal service of the DC-27 form listing the reasons that Officer Soucie suspected he was driving under the influence of alcohol. Wagner was also provided oral and written notice of the consequences of refusing to submit to the breath test as well as the procedure for requesting an administrative hearing to contest the suspension order.

Wagner has also had a meaningful opportunity to be heard. His request for an administrative hearing was timely made and the hearing occurred three months after his request. After the hearing officer affirmed the suspension order, Wagner timely sought judicial review by the district court. A hearing occurred where Wagner presented

7

evidence and made arguments to the district court. After the district court affirmed the suspension order, Wagner timely appealed to this court. Wagner was not deprived of a meaningful opportunity to be heard. Therefore, we hold that Wagner's procedural due process rights were not violated.

*Wagner's argument regarding the status of his license lacks merit.*

Wagner argues that his driving license was not expired because Governor Kelly's executive order had extended the deadline to renew driving licenses. On December 22, 2020, during the COVID pandemic, Governor Kelly issued Executive Order 20-70. Because of contagion concerns, staffing of state offices was restricted and in-person governmental functions were limited. In pursuit of these public safety concerns, this order extended the deadline for driving license renewals to June 30, 2021. The order also removed the age limit to allow people 50 or older to renew licenses online as an incentive to renew remotely and not in person. There is no mention of DC-27 forms or other Department of Revenue administrative procedures in the order.

The dates that are pertinent here are: Wagner was stopped on May 1, 2021. His driving license expired on March 23, 2021. Under the Governor's order Wagner could renew his license until June 30, 2021.

The extension of the deadline to renew a driving license does not change the status of the license. Officer Soucie did not issue Wagner a ticket for an expired license. Therefore, Officer Soucie complied with the executive order because no consequence befell Wagner as a result of his expired license. Officer Soucie's statement that Wagner's license was not valid on the DC-27 form was not false or insufficient that would require the suppression of the entire form as Wagner suggests. Thus, substantial competent evidence supported the district court's finding that the statement in the DC-27 form does not absolve Wagner of the suspension of his driving license.

*Suspension of Wagner's driving privileges is proper.*

Wagner fails to show that the statements in the DC-27 form were false or insufficient and he does not establish that the district court's findings were unsupported by substantial competent evidence. Simply put, this officer had good reasons to stop Wagner—running the stop sign and failing to signal his turn. The officer had good reasons to ask for a breath test—the odor of alcohol from the car, Wagner's slurred speech, his poor performance on the field sobriety tests. Wagner refused a breath test. There is nothing in this record that compels us to rule that the mandatory one-year suspension of Wagner's driving privileges should be voided.

We are faced with the same record as the district court and agree with that court's findings. We hold that the Governor's executive order did not turn an expired license into a valid license. It did not change the law. Instead, it offered respite and public protection from exposure to a deadly disease. This DC-27 form spoke the truth. The district court was correct in its reasoning and findings.

Affirmed.